In the

# United States Court of Appeals

## For the Seventh Circuit

No. 25-2279

CASSANDRA SYKES,

*Plaintiff-Appellant,*

*v.*

EXPERIAN INFORMATION SOLUTIONS, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:22-cv-07033 — **John J. Tharp Jr.**, *Judge.*

ARGUED FEBRUARY 25, 2026 — DECIDED JULY 30, 2026

Before KIRSCH, JACKSON-AKIWUMI, and PRYOR, *Circuit Judges.*

JACKSON-AKIWUMI, *Circuit Judge.* Cassandra Sykes executed a deed in lieu of foreclosure in 2016. Two years later, she filed for and was granted a Chapter 13 bankruptcy discharge. Experian Information Solutions, Inc. reported those facts—the deed in lieu of foreclosure and the bankruptcy discharge—on Sykes's credit report. Experian also reported that Sykes's mortgage account carried a past due balance and had a balloon payment due on a future date.

Sykes sued Experian alleging that it violated the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b), by reporting inaccurate or misleading information about her mortgage account given her bankruptcy discharge. The district court dismissed Sykes's complaint for failure to allege a factual inaccuracy under § 1681e(b). In the court's view, evaluating the accuracy of the information Sykes complained about required legal determinations Experian was not required to make. *See Chuluunbat v. Experian Information Solutions, Inc.*, 4 F.4th 562, 565 (7th Cir. 2021); *Denan v. Trans Union LLC*, 959 F.3d 290, 295–96 (7th Cir. 2020). We agree and affirm.

**I**

In 2010, Sykes obtained a home mortgage from Bayview Loan Servicing, LLC, which later changed its name to Community Loan Servicing, LLC. Sykes defaulted on that loan so, in 2016, she transferred the deed to her home to Community Loan Servicing pursuant to a deed in lieu of foreclosure. That deed was recorded in Cook County and stated that (1) Sykes defaulted on her mortgage loan, (2) the entire unpaid principal balance on the loan was immediately due, and (3) release of personal liability and forgiveness of payment constituted consideration for the transfer.

In 2018, Sykes filed for Chapter 13 bankruptcy in the Northern District of Illinois. She complied with all the requirements of her bankruptcy plan, and the court entered a discharge order. The discharge order stated in part:

(1) "Most debts are covered by the discharge, but not all. Generally, a discharge removes the debtors' personal liability for debts provided for by the chapter 13 plan";

(2) "Some debts are not discharged"; and

(3) "This information is only a general summary of a chapter 13 discharge; some exceptions exist. Because the law is complicated, you should consult an attorney to determine the exact effect of the discharge in this case."

The discharge order did not reference Sykes's mortgage debt to Community Loan Servicing.

Sykes obtained a copy of her credit report in 2022.[1] The report reflected that Sykes had a charge card account discharged through Chapter 13 bankruptcy. It also listed Sykes's Community Loan Servicing mortgage account. For the status of that account, the report noted, "Creditor received deed. Balloon payment of $67,209 due Dec 2055. $2,762 past due as of Oct 2016." The report separately noted that the mortgage account carried a $145,952 balance.

Sykes sued Experian based on the information in the report. She alleged that Experian conveyed a misleading impression of her credit status by reporting her bankruptcy as discharged while also reporting the mortgage account as an outstanding obligation. She further alleged that Experian failed to follow reasonable procedures to assure maximum possible accuracy in reporting information on the mortgage account. Experian moved to dismiss Sykes's complaint. The company argued that Sykes failed to allege a factual

---

[1] Sykes alleged in her complaint that Experian sent her credit report to third parties. Experian does not dispute that third parties received Sykes's credit report, nor does it dispute Sykes's standing, so we remain satisfied that we have jurisdiction. *See Chuluunbat*, 4 F.4th at 566 n.3.

inaccuracy or that Experian knew that her mortgage debt had been discharged.

The district court granted Experian's motion. The court understood the error Sykes alleged to involve two questions: whether the deed in lieu of foreclosure rendered Sykes's mortgage unsecured and, if it did, whether that unsecured debt was discharged. Both questions, the court reasoned, required legal analysis rather than verification of objectively ascertainable facts. In reaching that conclusion, the court emphasized that the discharge order did not specify that Sykes's mortgage debt was discharged and expressly cautioned that determining the scope of Sykes's discharge could require legal analysis. The court held that Sykes failed to allege a factual inaccuracy because her claim turned on whether her mortgage debt was discharged in bankruptcy, which it characterized as a legal determination.

The court also rejected Sykes's argument that Experian's report was materially misleading because it included the deed in lieu of foreclosure and her bankruptcy alongside a balance on the mortgage account. The court recognized that Experian reported both the bankruptcy discharge and the historical status of the mortgage account. But this information was only inconsistent, the court opined, if Sykes's mortgage loan was discharged in bankruptcy. The court concluded that determining that issue was beyond Experian's obligations under § 1681e(b), so it dismissed Sykes's complaint.

**II**

We review de novo a dismissal for failure to state a claim. *Nw. Ill. Area Agency on Aging v. Basta*, 145 F.4th 695, 700 (7th Cir. 2025). To survive a motion to dismiss, a plaintiff must

allege facts that plausibly state a claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At this stage, we accept all well-pled facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Basta*, 145 F.4th at 697. But we do not accept the truth of "conclusory statements" or "threadbare recitals of the elements." *Iqbal*, 556 U.S. at 678.

The Fair Credit Reporting Act (FCRA) outlines the responsibilities of consumer reporting agencies (CRAs) and creditors with respect to their roles in the "credit reporting market." *Denan*, 959 F.3d at 294. In essence, creditors report information related to a consumer's credit profile to CRAs, and CRAs document that information on the consumer's credit report. *Chuluunbat*, 4 F.4th at 566. Only the requirements imposed on CRAs pursuant to § 1681e are relevant to this case.

Section 1681e requires CRAs to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 809 (7th Cir. 2023); *see also* Fair Credit Reporting Act, 15 U.S.C. § 1681e(b). The statute does not define accuracy. *Chaitoff*, 79 F.4th at 809. However, we have understood the term to encompass "both truth and completeness." *Id.* As such, a report is inaccurate if it contains false information or "is misleading or materially incomplete." *Id.* That is because, at least in the context of credit determinations, "false impressions can be just as damaging as false information." *Id.* at 813. For Sykes's claim to proceed, therefore, her complaint must plausibly allege that Experian reported false, misleading, or materially incomplete information about her creditworthiness. *Id.* at 809.

Sykes asserts that the district court misapprehended her allegations. She maintains that her complaint challenged

Experian's misleading presentation of information in her
credit report, not its failure to interpret law. According to
Sykes, Experian knew or should have known that her mort-
gage became unsecured when she executed a deed in lieu of
foreclosure and that unsecured debts are generally dis-
charged in Chapter 13 bankruptcies. She maintains that Ex-
perian cannot simultaneously report that her bankruptcy was
discharged and that she has a mortgage balance without mis-
leading creditors who read the report. But, fatal to her claim,
any alleged inconsistency would only be uncovered through
legal analysis outside of Experian's purview.

Our court has assessed the "sometimes-murky boundary
between 'law' and 'fact'" under the FCRA several times in re-
cent years. *Chuluunbat*, 4 F.4th at 565. Each time, we reaf-
firmed our view that "[t]he power to resolve … legal issues
exceeds the competencies of consumer reporting agencies."
*Denan*, 959 F.3d at 295.

In *Denan*, the plaintiffs argued that their loan agreements
with tribal lenders were void under state law and therefore
should not have been reflected on their credit reports. *Id.* at
292–93. We rejected that theory and affirmed dismissal, hold-
ing that § 1681e(b) does not require CRAs to determine the
legal validity or enforceability of debts. *Id.* at 295–96. In doing
so, we distinguished between a CRA's responsibility and ca-
pacity to assess factual inaccuracies and its inability to assess
legal disputes. *Id.*

The following year we decided *Chuluunbat*, where the
plaintiffs disputed ownership of debt accounts the defendant-
CRAs listed on the plaintiffs' credit reports. 4 F.4th at 565. We
understood plaintiffs' challenges as asking the CRAs to re-
solve legal questions about who legally owned or had the

right to collect on the debts. *Id.* at 568. We concluded that the plaintiffs' claims did not allege the sort of factual inaccuracies the FCRA requires CRAs to investigate or correct because the claims required legal determinations that exceeded the CRAs' "competency." *Id.* at 568–69.

Most recently, in *Chaitoff*, the plaintiff alleged that Experian reported his mortgage as delinquent and simultaneously omitted the existence of a Trial Period Plan (TPP) under which the lender had agreed to accept reduced payments. 79 F.4th at 809–10. We ruled for the plaintiff, explaining that "the existence of a TPP is a factual, not legal, question" and CRAs have an obligation to avoid omitting objectively verifiable information whose absence could render a report materially misleading. *Id.* at 814. We reasoned that reporting the TPP did not require Experian to conduct legal analysis. *Id.*

It is clear from these cases that CRAs must report facts that are ascertainable from available records (including legal documents) but have no obligation to discern the meaning of those documents. That is, the FCRA does not require CRAs to resolve legal disputes, interpret contracts or statutes, or determine the validity or enforceability of debts. *Denan*, 959 F.3d at 295–96 ("The power to resolve these legal issues exceeds the competencies of consumer reporting agencies."). Sykes's claim fails under that principle.

The parties agree Experian reported that Sykes executed a deed in lieu of foreclosure, received a Chapter 13 bankruptcy discharge, and had an outstanding mortgage obligation as of 2016. Sykes's claim depends, therefore, on whether Experian should have discerned that Sykes's mortgage had been discharged based on available records. *Chuluunbat*, 4 F.4th at 568 ("The central question is whether the alleged inaccuracy turns

on *applying* law to facts or simply *examining* the facts alone."). Stated differently, the question is whether it should have been clear from the objectively verifiable information available to Experian that the report was inconsistent or inaccurate. The answer is no.

Unlike the existence of the agreement in *Chaitoff*, the discharge status of Sykes's mortgage is not an objective fact apparent from the face of the discharge order. *See* 79 F.4th at 815. Indeed, as Experian and the district court noted, the order is silent as to the mortgage account and it expressly cautions that determining whether an account is covered under the discharge order could require legal analysis. As such, whether Sykes's mortgage was discharged depends on the effect of (1) the deed in lieu of foreclosure on her mortgage status (secured versus unsecured), and (2) the discharge order on that debt. That is exactly the type of determination we have held is beyond the scope of a CRA's responsibility under § 1681e(b). *See Denan*, 959 F.3d at 295. In fact, in *Chuluunbat*, we rejected a similar argument to the one Sykes raises here. *See* 4 F.4th at 567. The same result is warranted.

Sykes's attempt to frame her claim as based on an internal inconsistency fares no better because her credit report is only inconsistent if the mortgage was discharged in bankruptcy. If, on the other hand, the mortgage survived the bankruptcy, reporting both the discharge and the historical mortgage information would be factually accurate and not misleading. *See Chaitoff*, 79 F.4th at 811 (explaining that a CRA's liability under § 1681e(b) "depends on inaccurate information—if the credit report is accurate, the consumer has suffered no damages"). Because the underlying inquiry requires legal analysis, Experian was not required to resolve it. Thus, no matter

how Sykes phrases her claim, she runs into the same roadblock and her claim fails.

### III

The FCRA does not require CRAs to make legal determinations to confirm the accuracy of the information they include in consumer credit reports. *Denan*, 959 F.3d at 295. Consequently, CRAs may sometimes report information that is inaccurate (in either a technical or legal sense) although it is not actionable under the statute. Such errors are distinguishable from actionable inaccuracies, which the CRA could have resolved by diligent factual review.

We accept that there may someday be a case where the meaning of a legal document is so commonplace or unambiguous that a CRA that overlooks or ignores that meaning may be held liable for a related factual inaccuracy. *See Chaitoff*, 79 F.4th at 815 ("Unstated but implicit in [the caselaw] is that CRAs can read and understand legal documents"). Or that there may be circumstances where an inconsistency on a credit report is apparent from readily ascertainable information. Our holding should not be read to foreclose a claim under FCRA in those situations. Our decision today merely applies our precedent and follows from the fact that any inaccuracy in this case is not apparent. Because the alleged error Sykes relies on could not have been resolved by reference to facts alone, the district court's judgment is AFFIRMED.